## PEARSOLL & STANTON *versus* MIDDLEBROOK.

1. An affidavit in attachment, made by the agent of non-resident plaintiffs, against the goods and effects of a non-resident debtor, stating that the plaintiffs resided in the State of New York; that the defendant was indebted in a certain sum, (describing the demand;) that the demand, having been contracted on a credit, was not due; that the defendant was not within the State of Alabama, so that ordinary process could be served on him—being also a resident of New York; that the defendant had not, within the affiant's knowledge, any property, in the State of his residence, sufficient to discharge the debt; and that the process was not prayed with the purpose of vexing or harrassing the defendant, or for other improper motive:—Held, a sufficient compliance with the requisitions of the statute laws of this State, to authorise the court to sustain the proceeding.[a]

2. The attachment laws of this State are not to be rigidly construed: and, any slight or formal defects in such proceedings, the courts are authorised to suffer amended.

Robert E. Center, as agent of the plaintiffs in error, filed an affidavit in attachment, against the goods and effects of the defendant in error. The process having issued and been returned to the Circuit court of Mobile, it was there proposed, on the part of the plaintiffs, to amend the affidavit, which was disallowed. A motion was then made, *amicus curiæ*, to quash the attachment, which prevailed: and was here assigned as error. The questions raised, chiefly refer to the sufficiency of the affidavit, to authorise the proceedings, under the attachment laws of this State.

SAFFOLD, J.—The suit was an original attachment in favor of the appellants, against the defendant, in the Circuit court of Mobile county. The attachment bears date, December, 1830.

[a] This decision was had upon the laws in force in June, 1832. The statutes now existing, it is not perceived, vary the law.

The affidavit on which the attachment issued, appears to have been made by Robert E. Center, the agent and attorney in fact of the appellants; it states, that they, Pearson and Stanton, then resided within the city and State of New York, and not in the State of Alabama; that S. H. Middlebrook was justly indebted to the plaintiffs, in the sum of five thousand seven hundred and forty-three dollars and fifty cents, describing the demand; that the debt was contracted on a credit of six months, and was not then due.

It further states, that Middlebrook was not then a resident of Alabama; but resided in New York, and was then actually out of this State, so that the ordinary process of law could not be served upon him; that said Middlebrook had not, then, within the knowledge or belief of the deponent, sufficient property, within the State of his residence, to satisfy the debt; and, that the process was not sued out, for the purpose of vexing or harrassing said Middlebrook, or other improper motive.

At the return term the plaintiff asked leave to file an amended affidavit, and to amend the original one, by stating that the goods for which the debt had been contracted, were obtained by fraud. The court permitted the affidavit to be filed; but refused to allow the plaintiffs the benefit of the proposed amendment.

The court, then, on motion of *Robert G. Gordon*, Esq. as *amicus curiæ*, quashed the attachment, for the insufficiency of the affidavit.

It is here assigned for error—

1st. That the court quashed the attachment.

2d. That the court refused to permit the proposed amendment of the affidavit.

The sufficiency of the affidavit must be determined with reference, alone, to our various statutes, relating to attachments.   Whether, of right, the remedy should be more favorable to resident, than non-resident creditors, we are not at liberty to decide, on abstract principle.   Nor can we be influenced by the consideration, that the laws of other States, (as suggested in argument,) may be less favorable to the latter description of creditors, than our own.   These are questions of expediency, which belong exclusively to another department of the government.

The statute of 1807, provides, that when any inhabitant of any other government, who cannot be personally served with process, shall be indebted to a resident of this State, and have any estate within the same; the judges or justices may grant an attachment against the estate of such foreign person. The act of December, 1814, " to revise, consolidate and amend the several acts relative to justices of the peace and constables," (Sec. 5th,) authorises the justices to issue attachments, if the plaintiff, his agent or attorney, make affidavit, "of the amount of the debt or demand due from the defendant, and that he or she absconds or secretes him or herself; that he or she actually resides out of this State; or that he or she is about to remove him or herself or effects from this State ; so that the ordinary process of law can not be served upon him or her ; and that the attachment is not sued out for the purpose of vexing or harrassing the defendant or other improper motive;" and also give bond and security as usual in attach-

ments, to indemnify the defendant for the wrongful or vexatious suing out of the attachment.

` The 7th Section of the same act provides, "that on application to any justice of the quorum or of the peace, if the plaintiff comply with the requisitions prescribed in the *fifth* section of this act, said justice may issue an attachment, although the debt ·or demand of the plaintiff may not be due; which attach-ment shall be a lien on the property attached, until such debt or demand `becomes due, when judgment shall be rendered and execution issued; but if the property attached be of a wasting or perishable na-ture, it shall be sold on a credit until the debt be-comes due, &c.

By the 15th section of the same act, justices of the peace, or of the quorum, are authorised to issue at-tachments, for any sums exceeding their jurisdiction, and make the same returnable to the superior courts, (now Circuit courts) under like circumstances, and on the same terms, on which they may issue attach-ments returnable before themselves, by the 5th sec-tion of the same act.

From these statutes the conclusion appears irre-sistible, that if the plaintiff were not entitled to the attachment, the right can be devised alone on the ground that they were not *residents* of this State, so as to be embraced by the provisions of the act of 1807 and of 1814, to which reference has been made. We think these acts are to be construed as statutes in *pari materia*, and that the latter does not remove any previous disability in the plaintiff's to sue : con-sequently his residence in the State has been consid-ered necessary to entitle him to an attachment on the ground of the *non-residence* of the debtor. Looking

alone to the statutes referred to, my opinion would be, as our practice has been, that.this objection should prevail against an attachment under the circumstances of this. There are however other statutes which were also referred to 'in argument, and which may require a different practice. The act of January 1814 is not deemed material: it is true, that it authorised attachments in all cases against the property of *absconding* debtors whether the sums were due or not; but it has been shewn that the subsequent act of December, of the same year, provides for the very same emergency (the *absconding* of the debtor,) as well as various other grounds of attachment: therefore it must, in these respects, at least, supersede the former.

But the act of 1824, " to amend the attachment laws laws of this State," is mainly relied on to sustain this proceeding. It provides "that when any person being a *non-resident* of this State shall be indebted to any person, also a *non-resident*, either by judgment, note or *otherwise*, and remove his or her property into, *or hold property in this State*, which would be subject to attachment for the benefit of a resident of this State, agreeably to the laws of the same, *that the same benefit shal. be extended to such non-resident as is by law secured to persons residing within this State;"* provided bond and security be given as therein required; and which is similar to that required by the act of December, 1814, previously referred to.

By the 2d section of this latter act, this remedy in favor of non-resident creditors, is farther qualified by the requisition " that in addition to the oath [then] required by law, such non-resident plaintiff, his agent, or attorney, before obtaining any such attach-

ment, as is authorised by this act, shall swear that the defendant or defendants against whom such attachment is sued out, hath or have not sufficient property within the state of his or their residence, within the knowledge or belief of such non-resident plaintiff, agent or attorney, (as the case may be) wherefrom to satisfy such debt or demand.

The principle is scarcely denied, (and under the statutes referred to, there would appear no ground on which to question it,) that the fact alone of the non-residence of the debtor, will entitle the creditor, if a resident to an attachment, whether the debt be actually due or not; provided he or his agent or attorney, make the affidavit and give the bond and security as required by the above recited act of December, 1814.

The question then recurs, whether, if the creditor be also a non-resident, his remedy is less, or different from that of a resident, and if so, in what does the difference consist. The 2d section of the act of 1824, it will be observed, required of a non-resident what is not necessary in case of a resident—that if the plaintiff be a *non-resident*, he, his agent or attorney, shall make the further affidavit that *the defendant has not sufficient property within the State of his residence to satisfy the debt.* After full discussion by counsel and due reflection and examination, we can perceive no other material distinction. The language of the statute, that, when any *non-resident* debtor "shall hold property in this State, which would be subject to attachment for the benefit of a resident of this State agreeably to the laws of the same, that the same benefit shall be extended to such *non-resident* as is by law secured to persons residing within this

State," necessarily places resident and non-resident plaintiffs, on the same footing, except as to the additional requisition, contained in the 2d section of the last recited act.

. It is not objected, that the affidavit does not contain the requisite averments, but that the *debt was not due*, and that the plaintiffs being non-residents, were not entitled to the process of attachment, on the ground of the non-residence of the defendant, until the maturity of the debt; that the right would only accrue before in the event that the debtor should *abscond* according to the provisions of the act of January 1814, above recited. This objection, however; is conceived to have been sufficiently answered by the references to the 5th and 7th sections of the act of December, 1814, and the act of 1824, which, in these respects supersede the former, and fully recognize the validity of this, as well as most of the other grounds of attachment.

But in order farther to test the construction of the 5th and 7th sections of the act of 1814, let it be supposed, that instead of the ground here taken, that the defendant resides out of this State, the affidavit had averred " that he was about to remove himself or effects from the State, so that the ordinary process of law could not be served upon him," which is also a cause for which the same section authorises an attachment; and let it be observed that the 7th section explicitly declares it to be immaterial, in the cases provided for in the 5th, whether the debt be due or not. If then, on the ground here supposed, an attachment had issued before the maturity of the debt, by what argument could its legality be resisted.— The former section recognizes such contemplated re-

moval, as well as the actual non-residence of the defendants, as a sufficient ground for an attachment, when the debt is due—the latter declares "if the plaintiff comply with the requisitions prescribed in the 5th section of the same act, said justice may issue an attachment, although the debt or demand of the plaintiff may not be due." If on the application supposed, the attachment could be refused, or if under these two sections one of the grounds can be admitted as sufficient to sustain an attachment, and the other disallowed, it must be alone on our individual notions of policy or expediency, which, as a court, we have no right to indulge.

If we were, however, subject to influence from motives of expediency, it would be worthy of reflection, whether, if one who had contracted a debt, while residing here, has actually removed himself from the State leaving some of his property behind, or if he be about to remove, the debt not being yet due; in either case would not justice require that the plaintiff should have the benefit of an attachment, or some lien, or security for his debt, in this State. Or if, as may have been the facts in this case, the debt was contracted in New York, or elsewhere, out of this State, with an understanding, express or implied, that the defendant would there vend the goods, for which the debt was contracted, and remain in that State until it should be paid; and in violation thereof he hurried the goods to this State, leaving no property in the other, out of which the debt could be paid or secured; and especially if his conduct was in other respects suspicious; would not common justice entitle the plaintiffs to an attachment in this State, where only it could be available? Such would accord with my ideas of

right; and, this, too, without awaiting the maturity of the demand : otherwise, a loss of the debt might be the unavoidable consequence. If the facts were, that the plaintiff and defendant were residents of different States—neither being of this, and the circumstances were, in all other respects, the same as in the hypothetical case last stated—justice would equally demand this remedy. In neither of the supposed cases, would the remedy by attachment be less just, or necessary, or more oppressive, than to allow it, before the maturity of the debt, in favor of a resident creditor, against his non-risident debtor, who had property here, and was discovered to be in a failing or suspicious condition; or against a resident debtor, who was "about to remove him or herself or effects, from the State.

It may be truly said, that the statutes do not authorise affidavits, stating suspicious circumstances, generally, or any grounds on which to apprehend the loss of the debt, other than those specified in the statutes referred to; yet, in all cases of attachment, under the statutes recited, the plaintiffs are required to make affidavit, (among other facts) that the attachment is not sued out for the purpose of vexing or harrassing the defendant, or other improper motive. The Legislature appears to have acted on the principle, that where the debt actually exists, (though payable, in future, by a non-resident, who has not property to satisfy it in the State of his residence,) this solemn disavowal of any design to vex or harrass the defendant, or other improper motive, together with the bond and security to indemnify the defendant, as required, furnishes a sufficient guaranty against any abuse of the process in cases like this, as well as

in relation to any of the various other grounds of attachment. Perhaps such general disclaimer of any intention to oppress, or other improper motive, may be an inadequate protection : admitting it to be so, yet, if the legislature has placed reliance on it alone— or, if, from any other motive, it has expressly prescribed, for the benefit of creditors, whose debtors reside in other States, where they have no property, the remedy by attachment, whether the debt be due or not—courts of justice have no authority to refuse to administer the law, as constitutionally declared.— If such contract be made in this State, or the defendant's property be here at the time, the parties must be presumed to contract with reference to this remedy, if found necessary ; if not, but the property be afterwards introduced by the debtor, it is to be regarded as his voluntary act—of the consequence of which he would have no cause of complaint.

. The doctrine that once prevailed in this court, as well as elsewhere, on the subject of attachments, that, as the remedy was extraordinary, and rigorous, and in derogation of, the common law, the statutes authorising it, should be strictly pursued ; and that no legal intendment ought to be allowed, in aid of this remedy—has been materially varied by the statute to amend the laws in relation to original attachments," passed January, 1828. The object appears to have been to secure to it the favorable consideration of the judiciary.

The seventh section directs, " that the several acts of this State, in relation to attachments, shall not be rigidly and strictly construed."

The eighth section provides, " that in all suits commenced by original attachments, the plaintiff, before

the trial, or during the period of the same, either before a justice of the peace, or in the County or Circuit courts, shall be permitted to amend any defect or defects of form, in the original papers, should it be made to appear to the satisfaction of such justice of the peace, or judge of the County or Circuit court, that such defect or defects were not made, for the purpose of defrauding the defendant."

This reference to the last statute, is made for the purpose only of shewing, that the remedy by attachment, now, assumes a more favorable attitude than heretofore, in our system of jurisprudence; and that if there were any slight or formal defects in the proceedings, the courts would be competent to intend, or actually order the requisite amendments; but we perceive no available objection to this remedy, or fatal effect in the prosecution of it; and, think the Circuit court erred in quashing the attachment.

As the first assignment has been found decisive of the case, it becomes unnecessary to examine the second. Let the judgment be reversed and the cause remanded.